United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN N. BYRNE,<br><br>    Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | No. 08-4136 SC<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY <u>JUDGMENT</u> |

## I. **INTRODUCTION**

This matter is before the Court on Plaintiff's Motion for Summary Judgment ("Motion"). Docket No. 18. Defendant Michael J. Astrue, Commissioner of Social Security, filed a Cross-Motion for Summary Judgment ("Cross-Motion") and Plaintiff filed an Opposition to the Cross-Motion. Docket Nos. 29, 30. For the reasons set forth below, the Court DENIES Plaintiff's Motion and GRANTS Defendant's Cross-Motion.

## II. **BACKGROUND**

### A. **Procedural History**

In September 2004, Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act

(the "Act"). Administrative Record ("AR") at 142, 483. The Commissioner denied the applications initially and upon reconsideration. Id. at 100-04, 108-13. Plaintiff requested a hearing and, on June 19, 2007, the Administrative Law Judge ("ALJ") found that Plaintiff was not disabled within the meaning of the Act. Id. at 18-27. The Appeals Council denied Plaintiff's request for review. Id. at 5-9. Plaintiff subsequently commenced this action for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

**B. Plaintiff's Medical History**

Plaintiff was born in Ireland in 1970. Id. at 83-84, 332-33. He emigrated to the United States as an adult, attended some college, and worked as a house cleaner, nanny, and as a self-employed aesthetician or skin-care specialist. Id.

1. Evaluation by Dr. Meisner

On August 18, 2004, psychiatrist Marc R. Meisner, MD, evaluated Plaintiff. Id. at 332-33. Plaintiff informed Dr. Meisner he had been in psychotherapy since 1993, and that he had been taking Prozac since 1997. Id. Plaintiff complained to Dr. Meisner of obsessive compulsive disorder ("OCD") and intrusive thoughts, stating that therapy and Prozac had helped in the past. Id.

Dr. Meisner increased Plaintiff's Prozac dose and noted an impression (but not diagnosis) of OCD and major recurrent depression. Id. Shortly thereafter, Plaintiff began taking Seroquel. Id. at 329. On September 12, 2004, Plaintiff was admitted to a hospital emergency room due to a drug reaction. Id.

2

at 320-23.  The emergency room physician noted palpitations, and made a discharge diagnosis of tachycardia, medication reaction and anxiety.  Id.

### 2. Evaluation by Dr. Wechsler

In connection with Plaintiff's claims for DIB and SSI, neurologist Robert Wechsler, MD, performed a comprehensive neurologic evaluation on January 30, 2005.  Id. at 277-80.  Dr. Wechsler reviewed notes from Drs. Peckler, Denham, and Weiner regarding Plaintiff's complaints of depression and OCD symptoms, including the emergency room discharge diagnosis.  Id.  According to Dr. Wechsler, Plaintiff appeared "tremulous" and his symptoms were "consistent" with Tourette's syndrome.  Id. at 278-79.  Dr. Wechsler noted that Plaintiff would benefit from psychiatric evaluation.  Id. at 280.  He found that Plaintiff "might" be limited in fine manipulation due to intermittent tremors, and Plaintiff "might" have communicative problems due to intrusive thoughts.  Id.

### 3. Evaluation by Dr. Schwimmer

On April 30, 2005, clinical psychologist William Schwimmer, PhD, examined Plaintiff.  Id. at 289-93.  After administering tests and reviewing records, Dr. Schwimmer determined that Plaintiff's scores on the administered tests (which indicated mild retardation) were invalid and inconsistent with Plaintiff's presentation.  Id. at 289-90.  Dr. Schwimmer noted some jerking movements, but no behavioral disturbances, and that Plaintiff was in an upbeat mood.  Id.  He diagnosed Plaintiff as a malingerer.  Id. at 291.  Dr. Schwimmer considered Plaintiff competent to

manage funds in his own behalf. Id.

### 4. Treatment by Dr. Miller and Dr. Kahn

Psychiatrist Michael Miller, MD, in Santa Rosa, examined Plaintiff. Id. at 386-91. Plaintiff complained of "intrusive thoughts" and feared hurting himself or others. Id. Dr. Miller observed pressured speech and occasional stuttering and noted severe impairment. Id. His diagnoses were OCD, social anxiety disorder and histrionic personality, and he set a goal of lowering Plaintiff's anxiety enough to be able to work. Id. Dr. Miller referred Plaintiff to an OCD group, noting diagnoses of OCD and Tourette's syndrome, and he described Plaintiff as histrionic with numerous obsessions but no compulsions. Id. at 384.

Before meeting with Dr. Miller, Plaintiff completed a Psychiatry Department Patient Questionnaire. Id. at 463-68. He also answered D-Arkansas Scale questions on September 28, 2005. Id. at 469-70. He said he felt depressed, suffered from decreased appetite and some weight change, had difficulty sleeping, was very tired, and felt guilt nearly every day. Id. He had trouble thinking and thought of suicide on a daily basis. Id. His total D-Arkansas depression score was 31 out of a possible 33. Id. at 470.

Dr. Miller referred Plaintiff to psychologist Jeffrey Kahn, PhD, who examined Plaintiff on November 21, 2005. Id. at 449-50. Dr. Kahn noted that Plaintiff presented "near disabling" symptoms and mental compulsions. Id. Dr. Kahn diagnosed Plaintiff with OCD and referred him to his OCD group. Id. Dr. Kahn completed a Yale-Brown Obsessive Compulsive Scale checklist of Plaintiff's

4

symptoms. Id. at 451. Dr. Kahn noted Plaintiff's "aggressive" sexual and religious obsessions, and a history of childhood molestation. Id.

Plaintiff continued seeing Dr. Miller, who diagnosed Plaintiff with OCD, social anxiety disorder and histrionic personality disorder. Id. at 454-55, 446-47. Plaintiff told Dr. Miller that he "felt depressed a lot" and, although he was jogging and working out, Plaintiff felt he couldn't work due to his anxiety. Id. at 424-25. In a Change of Provider Request Form, dated May 8, 2006, Plaintiff complained that Dr. Miller "does not listen to me." Id. at 356-57. Dr. Miller did not agree with Plaintiff that he was disabled. Id. Dr. Miller believed that Plaintiff was capable of working and should be working as part of treatment. Id.

### 5. Clinical Questionnaires

On May 30 and June 1, 2006, Plaintiff completed questionnaires for psychiatrist Thomas Lowe, MD, and the Tourette's & Tic Disorders Clinic (TTDC) at the University of California, San Francisco. Id. at 209-73. Plaintiff wrote that he suffered a head injury at age five and developed subsequent speech difficulties with signs of Tourette's syndrome. Id. at 233-37. He recounted his background, including a family history of depression and OCD/Tourette's syndrome. Id. Plaintiff listed his current symptoms as upper body tics, compulsive eye-rubbing and stuttering. Id. at 209-32.

On a Tourette's syndrome questionnaire, Plaintiff wrote that the medications he was currently taking made him fatigued. Id. at

5

238-73.  He wrote that he was diagnosed with OCD and chronic depression at age twenty-one, and listed his doctors' past possible diagnoses of his Tourette's syndrome symptoms as chronic depression, OCD and post-traumatic stress disorder ("PTSD").  Id.

### 6. Treatment by Dr. Kagan

On July 10, 2006, Plaintiff completed a questionnaire before his appointment in Santa Rosa with psychiatrist Alice Kagan, MD, again answering D-Arkansas Scale questions.  Id. at 408-15.  Listing fewer symptoms than he did on September 28, 2005, Plaintiff stated he had muscle spasms, tremors/tics, low energy, crying spells, negative thoughts, chronic depression over several years, panic attacks, fear, phobias, repetitive behaviors, intrusive thoughts, and was anxious.  Id. at 408-13.  He stated that he was abused for seven years, had a traumatic head injury at age six, listed his medications and recounted his family history of mental illness and Tourette's syndrome.  Id.  Plaintiff's D-Arkansas Scale answers indicated less intense symptoms than the previous year, resulting in a depression score of 15 out of a possible 33.  Id. at 414-15.

Dr. Kagan's report from her initial exam listed diagnoses of OCD, social phobia, personality disorder, and fatigue due to medication.  Id. at 416-19.  On July 25, 2006, Dr. Kagan called Plaintiff several times and attempted to leave a message, noting diagnoses of OCD and social phobia on the patient contact form.  Id. at 406-07.  Other than one in-person meeting in May 2007, most of Plaintiff's conversations with Dr. Kagan were by telephone between December 2006 and June 2007.  Id. at 396-405.

On July 24, 2006, Plaintiff completed a food stamp verification of disability form for Lake County Social Services. Id. at 392. On the form, Dr. Kagan diagnosed Plaintiff with major depression and PTSD, with a prognosis for a very slow recovery. Id.

Plaintiff spoke to Dr. Kagan by telephone on December 19, 2006. Id. at 404-405. Plaintiff wanted her to write a letter stating he was unable to work, but Dr. Kagan refused to do so. Id. She did not believe Plaintiff was permanently disabled, though she believed he would have difficulty with full-time permanent work due to his Tourette's, OCD, social phobia and depression. Id. She felt he might need to go through vocational rehabilitation. Id.

Between March 19 and May 3, 2007, Plaintiff consulted several times with Dr. Kagan by telephone. Id. at 396-403. When Plaintiff stated he couldn't visit her because he had moved to San Jose, she advised him to transition his care to San Jose. Id. at 398-99. In June, 2007, Dr. Kagan completed a medical opinion form regarding Plaintiff's ability to do work-related activities, based on her treatment, recent multiple phone contacts, a meeting on May 3, 2007, and a review of his records from 2004 to present. Id. at 394-95. Dr. Kagan indicated diagnoses of Tourette's syndrome, OCD and depression and she observed tics, obsessions and emotional instability with poor stress tolerance and easy frustration. Id. She evaluated his level of impairments, listing abilities ranging from "good" for certain skills and tasks to "poor or none" for concentration, appropriate interaction, consistent pace, regular

attendance, and carrying out detailed instructions. Id. She indicated anticipating three or more absences from work per month caused by impairments. Id.

### 7. San Jose Evaluations

On May 7, 2007, a social worker at Kaiser Permanente's Santa Teresa Psychiatry Adult Unit in San Jose listed diagnostic impressions of OCD and Tourette's syndrome. Id. at 513-516. The social worker noted some stuttering, depression, anxiety and obsessions. Id. On May 21, 2007, Plaintiff saw psychiatrist Jacob Roth, MD, in San Jose. Id. at 517. The visit with Dr. Roth was for medication management with minimal/no psychotherapy. Id. Dr. Roth noted that Plaintiff was on disability and was taking Prozac and Seroquel. Id. Dr. Roth noted that Plaintiff had obsessions and exhibited moderate symptoms of depression, anxiety, OCD and Tourette's syndrome. Id. He observed almost no persisting tics. Id.

## III. LEGAL STANDARD

To qualify for disability benefits, a claimant must show that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A). In making this determination, "an ALJ conducts a five step inquiry. 20 C.F.R. §§ 404.1520, 416.920." Lewis v. Apfel, 236 F.3d 503, 508 (9th Cir. 2001).

> The ALJ first considers whether the claimant is engaged in substantial gainful activity; if not, the ALJ asks in the second step whether the claimant has a severe impairment (i.e., one that significantly affects his or her ability to function); if so, the ALJ asks in the third step whether the claimant's condition meets or equals one of those outlined in the Listing of Impairments in Appendix 1 of the Regulations [20 C.F.R. §§ 404.1520(d) & 416.920(d)]; if not, then in the fourth step the ALJ asks whether the claimant can perform in his or her past relevant work; if not, finally, the ALJ in the fifth step asks whether the claimant can perform other jobs that exist in substantial numbers in the national economy. 20 C.F.R. §§ 404.1520(b)-404.1520(f)(1).

Id.

Courts may set aside a decision of the ALJ if it is not supported by substantial evidence or if the decision is not based on the correct legal standards. 42 U.S.C. § 405(g); Holohan v. Masanari, 246 F.3d 1195, 1201 (9th Cir. 2001). "Substantial evidence" is relevant evidence which a reasonable person might accept as adequate to support the ALJ's conclusion. Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). In order to be "substantial," the evidence must amount to "more than a scintilla," but need not rise to the level of a preponderance. Holohan, 246 F.3d at 1201. Where the evidence could reasonably support either affirming or reversing the ALJ's decision, a court may not substitute its judgment for the ALJ's decision. Id.

**IV. DISCUSSION**

Plaintiff contends that the ALJ's final decision is not supported by substantial evidence and contains reversible legal

errors. Mot. at 2.

**A. The ALJ's Five Step Inquiry**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity ("SGA") since the alleged onset date. AR at 20. At step two, the ALJ found that Plaintiff had the following severe impairments: affective disorder, OCD, anxiety disorder and Tourette's syndrome. Id. The ALJ found at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments outlined in the Appendix 1 Listing of Impairments. Id. at 21-22. The ALJ found that Plaintiff's impairments presented a "mild" restriction in daily activities, and "moderate" difficulty in social functioning, concentration, persistence or pace. Id. However, the ALJ also found that none of Plaintiff's impairments amounted to "marked" restrictions, complete inability to function outside the home, or more than minimal limitation of ability to do basic work activities. Id. at 21-22. There were also no episodes of decompensation or psychiatric hospitalization. Id.

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, though limited to simple repetitive tasks with no public contact and occasional supervisor and co-worker contact. Id. at 22. The ALJ's RFC finding was based on his evaluation of Plaintiff's credibility, the testimony of neurologist David Huntley, MD, the opinions of Drs. Wechsler and Schwimmer, the State agency assessments, and the reports and diagnoses of treating physicians Drs. Miller and Kagan. Id. at 24-25. At step

10

four, the ALJ concluded that Plaintiff was unable to perform his past relevant work. Id. at 25. At step five, after considering Plaintiff's age, education, work experience and RFC, and based upon the testimony of a Vocational Expert ("VE"), the ALJ concluded that there are jobs Plaintiff could perform, such as Kitchen Helper or Hand Packager, and that such jobs exist in substantial numbers in the national economy. Id. at 26-27. The ALJ concluded that Plaintiff had not been under a disability from his onset date of August 23, 2004, through the date of the decision. Id. at 27.

### B. The Parties' Contentions

Plaintiff contends that the ALJ failed to consider a fine manipulation limitation, and also improperly failed to consider the VE's testimony that Plaintiff would not be able to find an employer that would tolerate more than three absences per month, as anticipated by Dr. Kagan. Mot. at 4-6. Plaintiff contends that the ALJ improperly declined to give substantial weight to Dr. Kagan's diagnoses and opinions, improperly found Plaintiff's testimony not credible, and failed to consider the severe side effects of Plaintiff's medication in determining Plaintiff's RFC. Id. at 6-13. Finally, Plaintiff asserts that the Appeals Council was presented with new and material evidence but either did not properly consider that evidence or make the necessary findings concerning the evidence. Id. at 13-14.

Defendant responds that the ALJ properly considered and rejected the fine manipulation limitation noted by Dr. Wechsler. Cross-Mot. at 2-4. Defendant asserts that the ALJ properly

11

1 weighed all of the psychiatric evidence, including Plaintiff's
2 testimony and evidence of the side effects of his medication. Id.
3 at 4-10. Defendant contends that the Appeals Council properly
4 considered the additional evidence and concluded that it was not a
5 basis for changing the ALJ's decision. Id. at 10-11.

### C. Fine Manipulation Limitation

The Court agrees with Defendant that the ALJ did not fail to consider Dr. Wechsler's conclusion that Plaintiff "might" have a fine manipulation limitation. See AR at 24, 280. The ALJ specifically took note of Dr. Wechsler's statement that Plaintiff might have such a limitation. See id. at 24. Contrary to Plaintiff's contention, Dr. Wechsler did not actually conclude that Plaintiff "was limited in his ability for fine manipulation." Mot. at 5. Although the diagnoses of Drs. Miller and Kagan included Tourette's syndrome, and the ME, Dr. Huntley, agreed that there was some symptom evidence including tics to support those diagnoses, see AR at 69-70, there is no medical opinion in the record that establishes such a fine manipulation limitation as Dr. Wechsler contemplated "might" exist. Id. at 280.

In his Opposition, Plaintiff contends that the ALJ failed to consider Dr. Bianchi's opinion concerning a fingering limitation. See Opp'n at 3-4. Plaintiff is incorrect. The ALJ explicitly took into account the opinions of the state agency medical consultants. See AR at 25. Having considered all of the relevant testimony and evidence, the ALJ concluded that Plaintiff had sufficient RFC to perform a full range of work, with certain nonexertional limitations. Id. at 22-25. The Court finds that

the ALJ's decision was supported by substantial evidence.

**D.    Plaintiff's Credibility**

In determining Plaintiff's RFC, the ALJ considered all of the evidence, including side effects of medication, as required by 20 C.F.R §§ 404.1529 and 416.929. AR at 22-23. The ALJ considered the full record, including the testimony of the Plaintiff and the ME, Dr. Huntley, the opinions of Drs. Wechsler and Schwimmer, the state agency assessments, and the reports and diagnoses of Drs. Miller and Kagan. Id. at 24-25. The ALJ found Plaintiff's allegations as to the "intensity, persistence and limiting effects" of his symptoms to be "not entirely credible." Id. at 24.

Absent evidence suggesting malingering, an ALJ may still reject the claimant's testimony about the severity of his symptoms when the rejection is supported by specific, clear and convincing reasons for doing so. Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). Here, in assessing Plaintiff's credibility, there was evidence of malingering, see AR at 24, 289-91. The ALJ also relied on the specific fact that Plaintiff had infrequent or irregular treatment, and he noted an absence of physical, occupational, or other rehabilitative therapy. Id. at 23. The ALJ observed that during the hearing Plaintiff "did not manifest a noticeable stutter" and gave audible, understandable answers to questions. Id. at 24. The Court takes particular note of the fact that both of Plaintiff's treating physicians did not believe Plaintiff was disabled. Id. at 357, 404, 420. It was reasonable for the ALJ to reach the same conclusion as the

13

treating physicians. The Court therefore affirms the ALJ's decisions concerning Plaintiff's credibility.

### E. Residual Functional Capacity and Dr. Kagan's Opinion

At the hearing, the ALJ questioned the VE concerning the result of applying Plaintiff's actual or potential limitations to several different hypothetical employment situations. Id. at 87-94. In responding to a hypothetical question that took into account Dr. Kagan's opinion that Plaintiff could anticipate three or more absences per month, the VE stated that on the basis of that hypothetical the job market for Plaintiff would completely erode. Id. at 93.

The ALJ concluded, based on consideration of all the VE's testimony, as well as Plaintiff's background and RFC, that work exists that Plaintiff could perform. Id. at 27. In determining Plaintiff's RFC, the ALJ explained that, because of contradictions in the record as well as Dr. Kagan's own contradictory opinion that plaintiff was not permanently disabled, little weight was given to Dr. Kagan's opinion that Plaintiff was likely to miss three days of work per month. Id. at 25.

The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant. 20 C.F.R § 404.1527(d); see also Reddick, 157 F.3d at 725. However, if a treating physician's opinion is contradicted by the opinions of other doctors, the ALJ must provide specific and legitimate reasons supported by substantial evidence in the record for rejecting the treating physician's opinion. Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001).

In this case, the ALJ provided "specific and legitimate reasons supported by substantial evidence" for assigning little weight to Dr. Kagan's opinion. Plaintiff was treated by both Dr. Kagan and Dr. Miller, and the ALJ considered the diagnoses and opinions of both treating physicians. AR at 25. Dr. Miller's opinion was that Plaintiff was capable of working and should be working as part of his treatment. Id. In light of this opinion, Plaintiff requested a different psychiatrist. Id. The ALJ took note of Dr. Kagan's conflicting conclusions regarding whether Plaintiff's limitations were "profound" or "moderate." Id. The ALJ also took into account Dr. Kagan's progress note that "[Plaintiff] wanted me to write a letter stating that he is unable to work. I am uncomfortable writing this type of letter because I do not believe that he is permanently disabled." Id. at 404.

Based on the contradictions within Dr. Kagan's own opinions as well as the opinion of Plaintiff's other treating physician, Dr. Miller, the ALJ could legitimately determine that little weight should be given to Dr. Kagan's opinion. See Rollins, 261 F.3d at 856. Consequently, it is not unreasonable that the ALJ also gave little weight to the hypothetical constructed on the basis of Dr. Kagan's opinion. Furthermore, the ALJ properly took into account Dr. Kagan's diagnoses of major depression and PTSD by limiting Plaintiff to jobs with "simple repetitive tasks, no contact with the public, and occasional contact with supervisors or co-workers to whom the claimant has been introduced." AR at 22. The Court concludes that there is no basis to alter the ALJ's determinations concerning Plaintiff's RFC and Dr. Kagan's

15

diagnoses.

**F.     Additional Evidence Presented to the Appeals Council**

On appeal from the ALJ's decision, Plaintiff submitted additional materials, including his records from Kaiser Permanente's Santa Teresa Psychiatry Adult Unit in San Jose. Id. at 498-517. Plaintiff contends that the Appeals Council did not adequately consider the new evidence or make findings concerning the materiality of that evidence. Mot. at 13-14. However, the Appeals Council stated that it reviewed the additional evidence, but "found that this information does not provide a basis for changing the Administrative Law Judge's decision." AR at 6. The Appeals Council correctly noted that the additional evidence did not apply to the DIB appeal period. Id. at 6. With regard to Plaintiff's SSI claim, the Court agrees with Defendant that Dr. Roth's note merely consists of Plaintiff's self-reported history and does not contain findings. See id. at 517. To the extent that Plaintiff intends to rely on the intake form filed out by a social worker, see id. at 513-16, this form is not an acceptable medical source for purposes of establishing an impairment. See 20 C.F.R. §§ 404.1513(a), 416.913(a). Consequently, there is no basis to remand the decision based on the Appeals Council's handling of the additional evidence.

///
///
///
///
///

16

**V. CONCLUSION**

For the foregoing reasons, the Court DENIES Claimant's Motion for Summary Judgment and GRANTS Defendant's Cross-Motion for Summary Judgment.

IT IS SO ORDERED.

Dated: January 14, 2010

_____
UNITED STATES DISTRICT JUDGE